**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Latina I. Lindstrom,<br><br>  Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>  Defendant. | No. CV-20-01234-PHX-DGC<br><br>**ORDER** |

Plaintiff's claim for social security disability benefits was denied in May 2011. Administrative Transcript ("Tr.") 120-29. Plaintiff sought judicial review in November 2016, and, pursuant to the parties' stipulation, the case was remanded for further proceedings in July 2017. Tr. 1766-73; *see Lindstrom v. Comm'r of Soc. Sec.*, No. CV-16-03533-PHX-JAT (D. Ariz. Nov. 14, 2016). In August 2019, the Appeals Council remanded the case to the Administrative Law Judge ("ALJ") for further review. Tr. 1824-28. Plaintiff and a vocational expert testified at a hearing before the ALJ on August 13, 2019. Tr. 1678-1721. On October 22, 2019, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. Tr. 1583-99. The Appeals Council affirmed the ALJ's decision. Tr. 1570-76.

In June 2020, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). Doc. 1. The parties briefed the issues after receipt of the certified administrative transcript. Docs. 13, 20, 24, 25. Because the ALJ's decision is supported by substantial evidence and not based on legal error, the Court will affirm it.

**I.     Standard of Review.**

The Court reviews only those issues raised by the party challenging the ALJ's decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may reverse the decision where it is based on legal error or not supported by substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Id.* In determining whether substantial evidence supports the ALJ's decision, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn*, 495 F.3d at 630 (citation omitted). The ALJ is responsible for determining credibility and resolving conflicts in the medical evidence, and the decision must be upheld where the evidence is susceptible to more than one rational interpretation. *Magallanes*, 881 F.2d at 750.

**II.    The Five-Step Evaluation Process.**

Whether Plaintiff is disabled is determined using a five-step process. Plaintiff must show that (1) she is not currently working, (2) she has a severe impairment, and (3) her impairment meets or equals a listed impairment or (4) her residual functional capacity ("RFC") precludes her from performing past work. If Plaintiff meets her burden at step three, she is presumed disabled and the process ends. If the inquiry proceeds and Plaintiff meets her burden at step four, then (5) Defendant must show that Plaintiff is able to perform other available work given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520, 416.920(a)(4).

Plaintiff meets her burden at steps one and two – she has not worked since the alleged date of disability and has the following severe impairments: bilateral hearing loss;

right carpal tunnel syndrome; osteoarthritis in both knees; lumbar degenerative disc disease; chronic venous insufficiency of the lower extremities; hyperactive bladder; mixed stress urge incontinence; major depressive disorder; anxiety disorder; histrionic personality disorder; mood disorder; and cluster B personality traits. Tr. 1587.[1] The ALJ found at step three that Plaintiff's impairments do not meet a listed impairment. Tr. 1588-89. The ALJ determined at step four that Plaintiff's RFC precludes her from performing her past work as a bookkeeper and administrative assistant (Tr. 1597), but that she is able to perform light work with certain restrictions (Tr. 1590). Specifically, the ALJ found that, through the date last insured, Plaintiff had the following RFC:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except the claimant was able to occasionally climb ramps and stairs, but never climb ladders, ropes and scaffolds. She was able to occasionally balance, stoop and crouch, but never kneel or crawl. As well, the claimant could frequently handle and finger the right upper extremities. She was able to work in an environment with moderate noise, like that found in a department or grocery store. The claimant remained able to perform simple, routine tasks and make simple, work related decisions in an environment where change was infrequent and introduced gradually. Further, she remained able to perform work that did not require productions quotas or fast-paced rates, like those found in assembly line work. She could have occasional and superficial interaction with coworkers and the public, such that the interaction was brief, casual and incidental to the task performed. Finally, the claimant would have been off task 5% of the day to use the restroom.

Tr. 1590. Based on this RFC and relevant vocational factors, the ALJ determined at step five that Plaintiff is not disabled because there are a significant number of jobs she can perform, including light and unskilled work as a photocopy machine operator and a laundry press operator. Tr. 1597-98.

---

[1] The relevant period in this case begins with the alleged disability date of May 21, 2011, and ends with the expiration of Plaintiff's insured status under the Social Security Act on December 31, 2013. *See* Doc. 20 at 11; Tr. 1583, 1587.

**III.  Discussion.**

Plaintiff contends that the ALJ: (1) erred in rejecting her and her husband's testimony about the severity of her symptoms (Doc. 20 at 12-19); (2) improperly weighed the opinions of treating and examining physicians (*id.* at 19-24); and (3) erred in finding that Plaintiff can perform the jobs of photocopy machine operator and a laundry press operator (*id.* at 24-26).  Defendant counters that the ALJ committed no legal error and her decision is supported by substantial evidence.  Doc. 24 at 7-25.  The parties disagree as to whether any remand should be for an award of benefits or further proceedings.  Docs. 20 at 26, 24 at 25-26.

   **A.  Plaintiff's Symptom Testimony.**

Plaintiff testified that it was difficult for her to go anywhere outside her house and that she had difficulty concentrating.  Tr. 1647.  She stated that she would drop objects due to carpal tunnel syndrome and continued to have significant knee pain despite a course of injections.  Tr. 1655.  She claimed to have a severe headache once per week.  Tr. 1655-56.  During the relevant period from 2011 to 2013, she states that she could stand or sit for only 30 minutes at a time.  Tr. 1656.  She described having incontinence and feeling embarrassed to leave her house because she could not afford pads.  Tr. 1657.  She testified that she left her job as an office manager after making mistakes, and eventually had a nervous breakdown.  Tr. 1693-93; *see* Doc. 20 at 10, 13.

The ALJ did not completely reject Plaintiff's testimony about the severity of her symptoms, but instead found that Plaintiff's symptoms did not render her unable to engage in substantial gainful employment of any kind.  *See* Tr. 1590-93.  Specifically, the ALJ found that Plaintiff's impairments could reasonably be expected to cause her alleged symptoms, but that her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  Tr. 1589-90.  The ALJ ultimately concluded that Plaintiff "was limited prior to the expiration of her insured status, just not to the extent she alleged."  Tr. 1590.

Because there is no evidence of malingering, the ALJ could discount Plaintiff's testimony about the severity of her symptoms only by making "specific findings stating clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see* 20 C.F.R. § 404.1529(c)(2); SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). "The ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints – general findings are insufficient." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (citation omitted); *see Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (finding insufficient the ALJ's "boilerplate statement" that the claimant's symptom testimony was "not entirely consistent with the objective medical evidence"). As explained more fully below, the ALJ provided specific, clear, and convincing reasons, supported by substantial evidence, to discount Plaintiff's testimony.

### 1. Lumbar Degenerative Disc Disease and Back Pain.

With respect to her low back pain, Plaintiff contends that the ALJ did nothing more than offer "non-specific conclusions that [Plaintiff's] testimony was inconsistent with her medical treatment." Doc. 20 at 13 (citation omitted). The Court does not agree.

The ALJ found that imaging studies, combined with Plaintiff's complaints of low back pain, showed that her degenerative disc disease was a severe impairment that would limit her to a light level of exertion and to lifting and carrying no more than 20 pounds. Tr. 1591. The ALJ further found, however, that Plaintiff's clinical examinations routinely showed minimal functional limitations. *Id.* The ALJ noted that Plaintiff had a normal gait, intact strength of the extremities, negative straight leg raises, and only occasional reduced lumbar range of motion. *Id.* (citing Exs. B13F; B23F; B24F; B26F; B27F; B31F). The ALJ further noted that, even after her insured status expired, Plaintiff continued to have normal strength and a full range of motion in her lumbar spine. *Id.* (citing Ex. B67F); *see also* Doc. 24 at 12 (citing medical records).

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins*

- 5 -

*v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404. 1529(c)(2)); *see Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); SSR 16-3p, 2017 WL 5180304, at *5 (Oct. 25, 2017) (explaining that "objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities"). The ALJ did not err in finding that Plaintiff had "fairly unremarkable physical examinations" and should be limited to lifting and carrying no more than 20 pounds "to avoid aggravating her lower back pain." Tr. 1590; *see Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) (the ALJ properly discounted the claimant's symptom testimony based on physical examination findings); *Suica v. Saul*, No. 2:20-CV-00853-BNW, 2021 WL 2624515, at *8 (D. Nev. June 25, 2021) ("The ALJ's finding that objective medical evidence is inconsistent with Plaintiff's pain and symptom testimony was . . . a specific, clear, and convincing reason, supported by substantial evidence, to discount her pain and symptom testimony."); *Kathleen A. v. Comm'r Soc. Sec. Admin.*, No. 6:20-CV-00521-YY, 2021 WL 2313199, at *5 (D. Or. June 7, 2021) ("[T]he ALJ provided 'specific, clear, and convincing reasons' for discounting plaintiff's subjective symptom testimony based on inconsistencies with objective medical evidence[.]").[2]

### 2. Osteoarthritis and Knee Pain.

The ALJ found that knee injections Plaintiff received in May and September 2012 gave her "at least some improvement." Tr. 1592 (citing Ex. B31F). Plaintiff contends that this was not a clear and convincing reason to reject her testimony. Doc. 20 at 14. But the cited medical record supports the ALJ's finding – it explains that Plaintiff "received cortisone injections bilaterally in May, with good pain relief[,]" and she "received repeat

---

[2] Plaintiff asserts that the ALJ failed to account for clinical findings showing that Plaintiff had been diagnosed with lumbar radiculopathy and experienced pain with range of motion. Doc. 20 at 14 (citing Tr. 789-95). But the ALJ limited Plaintiff to lifting up to 20 pounds because of her low back pain. Tr. 1591. The ALJ made clear that Plaintiff "was limited prior to the expiration of her insured status, just not to the extent she alleged." *Id.*

- 6 -

corticosteroid injections in September, with a lesser degree of pain relief." Tr. 918. The ALJ did not err in finding that the injections gave Plaintiff some improvement.[3]

What is more, the ALJ provided additional clear and convincing reasons for discounting Plaintiff's testimony that her knee pain significantly limited her ability to stand and walk. The ALJ noted that knee x-rays taken in May 2012 showed only mild osteoarthritis. Tr. 1591 (citing Ex. B31F/17, Tr. 934). The ALJ further noted that physical examinations revealed full range of motion in both knees, normal strength of the knees and lower extremities, a normal gait, and no edema. Tr. 1591-92 (citing Exs. B13F; B21F; B23F; B24F; B26F; B27F; B28F; B31F; B50F). The cited medical records – which Plaintiff does not address – constitute substantial evidence supporting the ALJ's findings. *See also* Doc. 24 at 13-14 (citing medical records).[4]

### 3. Urinary Incontinence.

Plaintiff argues that the ALJ incorrectly suggested she did not have daily urinary incontinence. Doc. 20 at 14. Plaintiff is wrong.

The ALJ specifically noted that Plaintiff "testified of urinary incontinence and sudden urges to use the restroom." Tr. 1592; *see also* Tr. 1590 ("the claimant alleged having bladder urgency with the need to use the restroom every 30-60 minutes"). The ALJ found that "incontinence appears to have continued throughout the date last insured," noting that a treating urologist reported that Plaintiff "had this problem for years and it was associated with the feeling of incomplete bladder emptying." Tr. 1592 (citing Ex. B41F/1). Because of Plaintiff's "urinary incontinence and frequent urges prior to the date last insured," the ALJ included in the RFC a limitation that Plaintiff "would be off task five percent of the time, which would allow her to use the restroom and change pads as needed."

---

[3] Plaintiff reported having pain "when kneeling, rising from a chair, or ascending stairs." Tr. 918. The ALJ's RFC determination appropriately limited Plaintiff to only occasionally crouching and climbing stairs and never kneeling. Tr. 1590.

[4] The ALJ also found that, "[o]n occasion, there was trace effusion in the bilateral knees with tenderness, mild patellofemoral crepitance, and painful knee range of motion. Tr. 1591-92 (citing Exs. B31F/3, 16; B50F). The ALJ appropriately limited Plaintiff to a "light level of exertion with postural restrictions in an effort to accommodate [her] back, knee, and lower extremity pain." Tr. 1592.

1  *Id.*; *see also* Tr. 1590 ("the claimant would have been off task 5% of the day to use the
2  restroom"). Plaintiff has not shown that the ALJ erred in providing this RFC limitation.

### 4. Mental Impairments.

Plaintiff contends that the ALJ failed to provide specific reasons for discounting her testimony about the severity of her mental impairments. Doc. 20 at 15. The Court does not agree.

Plaintiff notes, correctly, that "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014)). But Ninth Circuit "cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *Lambert*, 980 F.3d at 1277. And the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences" from the ALJ's decision. *Magallanes*, 881 F.2d at 755. Having carefully reviewed the ALJ's decision, the record as a whole, and the parties' arguments, the Court finds that the ALJ did not err in discounting Plaintiff's testimony.

The ALJ specifically identified the testimony she found not entirely credible. "During the hearing, [Plaintiff] testified that when she was last employed, she began making mistakes and eventually had a nervous breakdown." Tr. 1590. Plaintiff further "testified she was unable to work because of numerous impairments, including anxiety [and] depression[.]" *Id.* In finding that Plaintiff's mental impairments did not meet a listed impairment, the ALJ recounted Plaintiff's statements about the severity of her impairments: "she has difficulty remembering generally, following instructions, and completing tasks"; "she has difficulty engaging in social activities and spending times in crowds"; "she has limitations in concentrating generally, watching TV, focusing generally, completing tasks, and avoiding distractions"; and "she has difficulties handling change and managing her mood." Tr. 1588-89. The ALJ did not fail to specify what testimony was not entirely credible.

Nor did the ALJ fail to provide clear and convincing reasons for discounting the testimony. Medical records showed "waxing and waning symptoms, primarily attributed to family and relationship stress, as well as financial difficulties." Tr. 1592 (citing Ex. B38F/20-23; B48F/2-3). One treatment provider noted that while Plaintiff was very dramatic, her depression and anxiety were stable. *Id.* (citing Ex. B38F/4). Plaintiff occasionally acknowledged "stable, or at least improved, conditions with adherence to medication." Tr. 1593 (citing Exs. B17F/12; B22F/10; B36F/5). Mental status examinations found Plaintiff "alert, oriented, and cooperative" with "appropriate appearance, . . . intact to fair memory, logical thought process, intact to limited concentration, [and] partial insight and judgment." *Id.* (citing Exs. B7F; B16F; B17F; B22F; B38F). During an October 2011 examination, Plaintiff's "attention span was satisfactory and she interacted in a friendly, trustful, and cooperative manner." *Id.* (citing Ex. B12F). A progress note also reported that Plaintiff was "concerned about her disability claim and appear[ed] to be overemphasizing her symptoms so as not to appear too healthy." *Id.* (quoting Ex. B38F/18). In finding that Plaintiff's impairments did not meet a listed impairment, the ALJ noted that Plaintiff "was able to provide information about her health, follow instructions from healthcare providers, comply with treatment outside of a doctor's office or hospital, and respond to questions from medical providers." Tr. 1588-89. And according to her own statements, Plaintiff was "able to get along with others, spend time with friends and family, and live with others." Tr. 1589.

The ALJ found that some functional limitations were warranted because Plaintiff occasionally had restless demeanor, anxious and depressed mood, poor insight and judgment, and limited concentration. Tr. 1593; *see* Doc. 25 at 3. The ALJ limited Plaintiff to "perform[ing] simple, routine tasks and mak[ing] simple, work related decisions in an environment where change was infrequent and introduced gradually," and she could have only "occasional and superficial interaction with coworkers and the public, such that the interaction was brief, casual and incidental to the task performed." Tr. 1590. The ALJ concluded, however, that "[a]lthough the medical record supports finding severe mental

impairments, the evidence is not significant enough to conclude limitation beyond that described in the [RFC]" and "is not persuasive of symptoms and limitations that would preclude all employment." Tr. 1592-1593.

Plaintiff has not shown that the ALJ erred in discounting her symptom testimony and determining her mental RFC. *See Swingle v. Colvin*, No. CV-15-00836-PHX-DGC, 2016 WL 1399362, at *5 (D. Ariz. Apr. 11, 2016) (affirming the RFC determination "[g]iven the ALJ's careful treatment of Plaintiff's mental health issues," and noting that the ALJ "was not required to include all possible limitations in his assessment of what a claimant can do, only 'limitations that the ALJ found credible and supported by substantial evidence in the record'") (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005)); *Elizabeth W. v. Saul*, No. EDCV 20-1254-KS, 2021 WL 2669304, at *6 (C.D. Cal. June 28, 2021) ("Plaintiff mischaracterizes the ALJ's discussion of the inconsistencies between Plaintiff's allegations about the intensity, persistence, and limiting effects of her symptoms, the objective medical evidence, and her own activities. Rather than relying on boilerplate language, the ALJ dived into the medical records and identified particular treatment notes that contradicted specific allegations Plaintiff made[.]"); *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (when assessing symptom testimony, the ALJ may consider the claimant's "well documented motivation to obtain social security benefits").[5]

### 5.   Daily Activities.

The ALJ properly considered Plaintiff's daily activities in the credibility analysis. *See* 20 C.F.R. § 404.1529(c)(3); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors"). The ALJ noted that, "in mid-2011, [Plaintiff]

---

[5] Plaintiff asserts that the ALJ "erred in suggesting that [she] was somehow less credible due to having a diagnosed personality disorder." Doc. 20 at 16; *see also* Doc. 25 at 4. But the ALJ merely noted that Plaintiff's "dramatic style . . . was attributed to histrionic personality disorder." Tr. 1593 (citing Exs. B7F; B12F; B38F).

reported residing with family and being able to care for her own personal hygiene [and] grooming needs, care for animals, vacuum about once a week, and shop outside the home." Tr. 1593 (citing Ex. B4E). The ALJ further noted that Plaintiff helped "care[] for her father-in-law, who had dementia." *Id.* (citing Ex. B48F/3). The ALJ found that her moderate RFC "accounts for these abilities and limitations." *Id.*

Plaintiff contends the ALJ erred by equating sporadic, limited household activities with the ability to work. Doc. 20 at 17. But the ALJ did not find that Plaintiff's activities showed an ability to work. Instead, she found that Plaintiff's "activities of daily living are not nearly as limited as one would expect given her complaints of disabling symptoms and limitations." Tr. 1593. The ALJ did not err in this regard. *See Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009) (the ALJ properly recognized that daily activities "did not suggest Valentine could return to his old job[,]" but "did suggest that [his] later claims about the severity of his limitations were exaggerated"); *Burch*, 400 F.3d at 680-81 ("Although the evidence of Burch's daily activities may also admit of an interpretation more favorable to [her], the ALJ's interpretation was rational, and 'we must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.'") (quoting *Magallanes*, 881 F.2d at 750); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (explaining that the ALJ may consider daily activities when weighing the claimant's credibility, and, "[i]f the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing") (citing *Morgan v. Apfel*, 169 F.3d 595, 600 (9th Cir. 1999)); *Kristin D. G. v. Sau*, No. 5:20-00310 ADS, 2021 WL 2714599, at *7 (C.D. Cal. June 30, 2021) ("Plaintiff argues that none of [her daily] activities show that she can perform full time work. Plaintiff is mistaken, however. The ALJ cited to Plaintiff's statements in the record of her daily activities to show the inconsistency with her testimony at the Administrative hearing, not her ability to perform full time work.") (citing *Thomas*, 278 F.3d at 958-59).

**B.      Lay Witness Statements.**

Statements of lay witnesses, such as family members, may help the ALJ assess the severity of a claimant's impairments. *See* 20 C.F.R. § 404.1513(d)(4). When an ALJ discounts lay witness statements, she "must give reasons that are germane to each witness." *Valentine*, 574 F.3d at 694 (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

In December 2012, Plaintiff's husband, Kevin Lindstrom, completed a third-party function report in which he described her as having significant incontinence, migraines, and pain. Tr. 454. He further stated that Plaintiff needed reminders to take medication, had too much anxiety to drive, and had difficulty with numerous tasks, including sitting, walking, and lifting. Tr. 456-61. The ALJ found that Mr. Lindstrom's statements were not persuasive of additional limitations in the RFC. Tr. 1596.

Plaintiff contends that the ALJ erred by giving generic and vague reasons to reject Mr. Lindstrom's statements. Doc. 20 at 18. Plaintiff is mistaken.

The ALJ explained that Mr. Lindstrom's statements generally were supportive of Plaintiff's allegations, noting that he reported that Plaintiff was "nearly always lying down and that her functioning had been dramatically reduced because of her various impairments." Tr. 1596 (citing Ex. B13E, Tr. 454-61). The ALJ concluded that "[s]ignificant weight cannot be given to [Mr. Lindstrom's] non-medical source statement because it, like [Plaintiff's], is simply not consistent with the preponderance of opinions and observations by medical doctors in this case, as well as the course of treatment pursued and the objective findings." *Id.*

Because Mr. Lindstrom's statements were "similar to Plaintiff's allegations, the ALJ's reasons for rejecting Plaintiff's testimony apply with equal force to the lay witness statements." *Clemente v. Comm'r of Soc. Sec. Admin.*, No. CV-20-01197-PHX-JJT, 2021 WL 1540986, at *5 (D. Ariz. Apr. 20, 2021). The ALJ therefore gave germane reasons for discounting Mr. Lindstrom's statements. *See id.*; *Valentine*, 574 F.3d at 694 ("Mrs. Valentine's testimony of her husband's fatigue was similar to Valentine's own subjective complaints. Unsurprisingly, the ALJ rejected this evidence based, at least in part, on 'the

same reasons she discounted Valentine's allegations.' In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

### C.  Medical Opinion Evidence.

Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. *Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995). Where, as here, the treating doctor's opinion is contradicted by another doctor, the ALJ "may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751.

Plaintiff contends that the ALJ failed to give specific and legitimate reasons for discrediting the opinions of Plaintiff's treating physician, Dr. Horrocks, and three examining physicians, Drs. Fruchtman, Rabara, and Steingard. Doc. 20 at 19-24. Defendant argues that the ALJ provided specific and legitimate reasons, supported by substantial evidence, to reject the medical opinions that Plaintiff had disabling mental and physical limitations. Doc. 24 at 17-24. The Court agrees with Defendant.

### 1.  Dr. Horrocks.

Dr. Horrocks completed multiple medical source statements on behalf of Plaintiff. In July 2011, Dr. Horrocks indicated that Plaintiff would be absent from work more than three days each month, could never lift 10 pounds, and could walk only a single block. Tr. 619-23; Ex. B9F. In December 2012, Dr. Horrocks wrote that Plaintiff had a "moderately severe" limitation in maintaining work pace (defined as being off-task 16-20% of an 8-hour workday). Tr. 1256-57; Ex. B46F. In March 2015, Dr. Horrocks wrote that, during the relevant period, Plaintiff was unable to sit for more than two hours, stand or walk for

more than two hours, or lift more than 10 pounds. Tr. 1420-23; Ex. B65F. Plaintiff contends that the ALJ erred in failing to give great weight to these opinions. Doc. 20 at 17-21. The Court does not agree.

The ALJ gave little weight to Dr. Horrocks's opinions because they are not consistent with his own treatment records. Tr. 1595 (citing B11F; B24F; B27F; B28F; B34F). The ALJ explained her reasoning as follows:

> Dr. Horrocks served as a family practitioner who treated the claimant for routine illness and impairments. This practitioner consistently observed that the claimant appeared healthy and in no acute distress. Dr. Horrocks' examination findings were largely unremarkable, revealing a normal gait, full lumbar range of motion, and intact muscle and tone in the extremities. This undermines his assertion that the claimant could only lift less than ten pounds and never walk more than a single city block. Further, Dr. Horrocks found that the claimant was alert and oriented with good judgment and insight, normal mood and affect, and intact memory. Thus this provider's opinions are not consistent with his own observations and findings, and he did not address this weakness.

*Id.*[6] The ALJ's interpretation of Dr. Horrocks's treatment records and her decision to give little weight to Dr. Horrocks's opinions that Plaintiff had disabling impairments are well founded. *See, e.g.*, Ex. B24F, Tr. 804 (noting that while Plaintiff was fatigued and had some muscle spasms and tenderness in her lower back and knees, she had a healthy appearance with normal tone and motor strength, normal gait and movement of all extremities, and normal mood, affect, and memory with good insight and judgment); Ex. B27F, Tr. 818-19, 821-22, 824-25, 827-28, 830-31, 833 (same); Tr. 838 (same without noting knee or back pain); Tr. 841 (same without noting knee pain); *see also* Exs. B11F, Tr. 625-26; B28F, 868-904; B34F, 983-1002 (noting no acute distress).

---

[6] The ALJ also gave little weight to the medical source statements Dr. Horrocks completed in 2016, 2017, and 2019 because these opinions concerned Plaintiff's functioning at the time the statements were issued, rather than looking back to provide information about Plaintiff's functioning prior to the end of her insured status. Tr. 1596 (citing Exs. B78F; B87F; B88F; B104F; B112F; B113F). Plaintiff does not challenge the ALJ's treatment of those opinions. *See* Doc. 20 at 20 (the ALJ "erred [in] evaluating Dr. Horrock's 2011, 2012, and 2015 medical opinions").

Plaintiff notes that Dr. Horrocks observed muscle spasms and tenderness in her lower back, diagnosed sacroiliitis, gave her cortisones injections in her lower back and knees, and treated her for migraines, carpal tunnel syndrome, and incontinence. Doc. 20 at 20 (citing Tr. 805, 822, 828, 918). Plaintiff further notes that mental health records reflect that Plaintiff was tearful, anxious, and disheveled with a labile affect and anxious mood, and had poor judgment and limited insight and concentration. *Id.* at 20-21 (citing Tr. 664, 656, 1011). But the ALJ did not ignore this medical evidence – she found that Plaintiff's medical conditions were severe impairments that warranted multiple physical and mental limitations in her RFC. Tr. 1587, 1590.

What is more, the ALJ did not wholly reject or accept any single medical opinion in determining Plaintiff's RFC. Instead, the ALJ "assessed specific restrictions on a function-by-function basis best supported by the evidence as a whole." Tr. 1593. The ALJ gave little weight to the state agency consultants' opinions that Plaintiff could perform medium level work because evidence received at the hearing showed that Plaintiff's RFC was more limited and the consultants did not adequately consider her subjective complaints or the combined effect of her impairments. Tr. 1593 (citing Exs. B3A; B5A). The ALJ gave partial weight to (1) the opinion Dr. Jones, who after examining Plaintiff opined that she could perform a range of light work with some restrictions, and (2) the testimony of medical expert Dr. Vu, who reviewed the record and found no evidence of a disabling impairment during the insured period. Tr. 1594; *see* Tr. 639-40, B13F; 1630-33. Plaintiff does not challenge the ALJ's partial reliance on these opinions, nor has she shown that the ALJ erred in giving little weight to Dr. Horrocks' opinions that Plaintiff's impairments are disabling. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (the contrary opinions of an examining doctor and a testifying medical expert served as valid reasons for rejecting the opinions of a treating physician); *Morgan*, 169 F.3d at 600 ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it").[7]

---

[7] The ALJ stated that Dr. Horrocks did not provide an explanation of the evidence

### 2. Dr. Fruchtman.

In April 2015, Dr. Fruchtman examined Plaintiff and opined that she had severe fatigue and could not complete a normal workweek. Tr. 1453, Ex. B67F. The ALJ gave Dr. Fruchtman's opinions little weight because his examination of Plaintiff "occurred well over a year after [her] insured status ended" and he "[did] not purport to explain [Plaintiff's] functioning prior to the end of her insured status." Tr. 1595.

Plaintiff contends that the ALJ erred because the state agency arranged for Dr. Fruchtman's examination and he reviewed numerous treatment notes from the relevant period. Doc. 20 at 22-23 (citing Tr. 1439, 1446). Plaintiff cites *Morgan*, 169 F.3d at 601, for the proposition that "a retroactive diagnosis, standing alone, may not be sufficient to discount the opinion of a treating physician." *Id.* But Dr. Fruchtman did not treat Plaintiff, and his diagnosis was not retroactive. He made clear that his findings were "[b]ased on today's examination" (i.e., April 23, 2015). Tr. 1453. And he failed to opine on "past limitations" or to identify the date on which the limitations he found were "first presented[.]" Tr. 1444. The ALJ did not err in giving little weight to his opinions. *See Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (affirming the ALJ's rejection of a retrospective opinion where it was not substantiated by medical documentation relevant to the insured period); *Turner v. Comm'r of Social Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (the ALJ was entitled to disregard an examining-source opinion provided after the date last insured, particularly where it conflicted with medical evidence during "the actual period at issue").

### 3. Dr. Rabara.

In June 2015, examining psychologist Dr. Rabara observed that Plaintiff's depression and anxiety were "genuine and significant," and opined that she would have a "marked" limitation in responding appropriately to usual work situations and dealing with

---

he relied on in forming his opinions. Tr. 1595. Plaintiff notes, correctly, that Dr. Horrocks attached a letter to his March 2015 "check box" assessment that sets forth "a brief description of [Plaintiff's] health history." Tr. 1422-23, Ex. B65F. Any error on the part of the ALJ in failing to consider the letter is harmless, however, given the other specific and legitimate reasons the ALJ gave for discounting Dr. Horrocks's opinions.

changes in a routine work setting. Tr. 1461; Ex. B68F. Plaintiff contends that the ALJ erred in giving little weight to Dr. Rabara's opinion on the sole basis that it was obtained more than a year after Plaintiff's insured status had expired. Doc. 20 at 24 (citing Tr. 1595; *Morgan*, 169 F.3d at 601). But Dr. Rabara's findings and opinions were based on his examination of Plaintiff in June 2015 (Tr. 1457-61), and he made clear that none of Plaintiff's medical records were available for review (Tr. 1455). The ALJ did not error in giving little weight to Dr. Rabara's opinions. *See Johnson*, 60 F.3d at 1432; *Turner*, 613 F.3d at 1224.

### 4. Dr. Steingard.

In October 2011, examining psychologist Dr. Steingard found that Plaintiff had some problems with concentration and social interaction, noting that her "dramatic manner" was "likely to be distracting and possibly irritating to people around her, including . . . other employees, supervisors, and the general public." Tr. 631, 633; Ex. B12F. Plaintiff contends that the ALJ erred in rejecting Dr. Steingard's findings solely because they were "vague." Doc. 20 at 24. This is not correct.

The ALJ noted that some of Dr. Steingard's assertions were vague, but nonetheless found that her "observations and clinical findings remain probative and persuasive." Tr. 1594. Those observations and findings included that Plaintiff appeared over-inclusive, circumstantial, and tangential, and had intact but limited insight and judgment, depressed mood, and difficulty focusing on complicated tasks. *Id.*; *see* Tr. 630-33. Dr. Steingard also found, however, that Plaintiff had appropriate affect and a satisfactory attention span, noting that Plaintiff scored 29 out of 30 on a mini mental status exam and was capable of understanding and carrying out simple instructions. *Id.* The ALJ concluded that Dr. Steingard's opinions deserved partial weight. Tr. 1594. Contrary to Plaintiff's assertion, the ALJ did not reject or fail to account for Dr. Steingard's opinion. Doc. 20 at 24.

### D. The Step-Five Determination.

The ALJ determined at step five that Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy,

including work as a photocopy machine operator and a laundry press operator. Tr. 1597-98. The ALJ based this determination on testimony from the vocational expert, the Dictionary of Occupational Titles ("DOT"), and Plaintiff's RFC, age, education, and work experience. *Id.*[8] Plaintiff asserts that the ALJ's determination "is in conflict with publications such as O'Net" and unspecified labor statistics, but does not explain why this is so. Docs. 20 at 25-26; 25 at 10-11.

Pursuant to SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000), the ALJ "determined that the vocational expert's testimony is consistent with the information contained in the [DOT]." Tr. 1598. The ALJ accepted the vocational expert's testimony and overruled Plaintiff's objection as to how the job of photocopy machine operator was defined, noting that an ALJ "may use several sources, including vocational expert testimony, when resolving vocational issues." *Id.* The ALJ did not err in relying on the vocational expert's testimony and the DOT. *See Bayliss*, 427 F.3d at 1218 ("[T]he ALJ's reliance on the VE's testimony regarding the number of relevant jobs in the national economy was warranted. An ALJ may take administrative notice of any reliable job information, including information provided by a VE.") (citing *Johnson*, 60 F.3d at 1435); *Crane v. Barnhart*, 224 F. App'x 574, 578 (9th Cir. 2007) ("The evidence Crane submitted . . . did not provide information regarding how many jobs were available in the local and national economies, and even if it had, the ALJ already relied on a proper source for that information – the VE's testimony, based on the DOT."); *Leslie v. Colvin*, No. 5:15-CV-190-GJS, 2015 WL 8334859, at *3 (C.D. Cal. Dec. 8, 2015) ("[T]he entire purpose of vocational experts is to interpret employment data for the ALJ to render a determination. . . . Leslie would have us adopt the bold assertion that [her] potentially unreliable and unexplained data receives controlling weight to the total exclusion of the vocational expert's testimony. That

---

[8] The vocational expert testified that a person with Plaintiff's RFC could not perform her past work as a bookkeeper and administrative assistant, but could perform available light work, identifying the occupations of photocopy machine operator (DOT #207.685-014), housekeeping cleaner (DOT #323.687-014), and laundry press operator (DOT #363.685-010). Tr. 1700; *see* Doc. 20 at 11.

- 18 -

proposition flies in the face of the 'substantial evidence' standard.") (citing *Crane*, 224 F. App'x at 578).

**IT IS ORDERED** that the final decision of the Commissioner of Social Security Administration is **affirmed**. The Clerk of Court shall enter judgment accordingly.[9]

Dated this 21st day of July, 2021.

*David G. Campbell*
David G. Campbell
Senior United States District Judge

---

[9] Given this ruling, the Court need not address the parties' arguments regarding the purpose of any remand. *See* Docs. 20 at 26, 24 at 25-26, 25 at 11.